**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MBM,**[1] | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. CIV-26-2307-D** |
| **WARDEN DIAMONDBACK CORRECTIONAL FACILITY, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner MBM, a noncitizen[2] proceeding with counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1. United States District Judge Timothy D. DeGiusti referred this matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Doc. 4. Respondents filed a response to the petition, Doc. 14, and Petitioner filed a reply, Doc. 15. So, the matter is at issue.

---

[1] On September 4, 2026, the undersigned granted Petitioner's motion to proceed under a pseudonym. Doc. 11; *see also* Doc. 7.

[2] This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

For the reasons below, the undersigned recommends that the Court **GRANT** the petition in part and order Respondents to release Petitioner on an appropriate order of supervision (OOS).

## I. Factual background and procedural history.

Petitioner is a citizen of El Salvador who entered the United States on an unknown date. *See* Doc. 1, Ex. 1, at 1, 10; Doc. 14, Ex. 1, at 2; *Id*. Ex. 4, at 1. Sometime in 2014, Petitioner was arrested, placed in ICE custody, and released on bond. *See* Doc. 1, Ex. 1, at 11. On June 24, 2014, the Department of Homeland Security (DHS) initiated removal proceedings against Petitioner. Doc. 14, Ex. 1, at 2. On December 11, 2014, Petitioner filed an application for deferral of removal under the Convention Against Torture (CAT). *Id*. Following another state conviction, Petitioner was again placed in ICE custody. *See* Doc. 1, Ex. 1, at 12 ("After I was in criminal custody, I was transferred to immigration custody[.]").

On June 28, 2018, an Immigration Judge (IJ) ordered Petitioner removed from the United States and granted deferral of removal under CAT.[3] *See* Doc.

---

[3] The IJ's written order is dated August 15, 2018. *See* Doc. 1, Ex. 2, at 8. However, Petitioner claims that the IJ originally issued the decision on June 28, 2018, and the IJ later reissued the decision because there was an error with how his name was written. *Id*. Ex. 1, at 13. This reflects the date listed on the EOIR Automated Case Information website. *See* EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last visited Nov.

1, Ex. 1, at 13; *Id.* Ex. 2, at 8; Doc. 14, Ex. 1, at 2. Petitioner did not appeal the IJ's decision, making his removal order administratively final on this date.[4] *See* 8 C.F.R. § 1241.1(c) ("An order of removal . . . shall become final . . . [u]pon expiration of the time allotted for an appeal if [Petitioner] does not file an appeal within that time[.]"). On September 12, 2018, Immigration and Customs Enforcement (ICE) released Petitioner on an OOS.[5] Doc. 1, Ex. 3, at 1-3.

On or around October 7, 2025, Petitioner was convicted of a drug-related crime. *See id.* Ex. 1, at 14; *see also* Doc. 14, at 2; *id.* Ex. 2, at 1. Petitioner was sentenced to two years' imprisonment but was set to be released after nine months. Doc. 1, Ex. 1, at 14. On July 13, 2026, an ICE official formally revoked Petitioner's prior OOS. Doc. 14, Ex. 4, at 1. On July 15, 2026, following his release from state custody, ICE re-detained Petitioner. *Id.* Ex. 1, at 3; *id.* Ex.

---

4, 2026). Petitioner's original OOS and a declaration from Enforcement and Removal Operations (ERO) Deportation Officer Jeff Ruiz also indicate that the IJ's original order was on June 28, 2018. Doc. 1, Ex. 3, at 1; Doc. 14, Ex. 1, at 2. Therefore, the undersigned finds that Petitioner was ordered removed on June 28, 2018.

4 *See* EOIR, Automated Case Information.

5 Deportation Officer Ruiz alleges that Petitioner was issued an OOS and released on July 17, 2018, which is inconsistent with the date listed on the OOS document. *Compare* Doc. 1, Ex. 3, at 1 *with* Doc. 14, Ex. 1, at 3.

2, at 2. That same date, Petitioner received a Notice of Revocation that indicated that his OOS had been revoked. *Id.* Ex. 2, at 2.

ICE is currently detaining Petitioner at the Diamondback Correctional Facility in Watonga, Oklahoma. *See* Doc. 18, Ex. 1, at 1.

## II. Petitioner's claims.

Petitioner claims, in relevant part, that his re-detention is unlawful under § 1231 and *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not "reasonably foreseeable."[6] Doc. 1, at 50-51. Petitioner requests, in relevant part, that the Court declare Petitioner's re-detention and revocation of release to be unlawful and grant "any other relief [the Court] deems just and proper."[7] *Id.* at 63-64.

---

6 Petitioner also alleges that his detention is unlawful because it violates his procedural and substantive due process rights under the Fifth Amendment, the OOS revocation procedures under 8 C.F.R. §§ 241.4 and 241.13, the Administrative Procedure Act (APA), and the *Accardi* doctrine under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Doc. 1, at 45-49, 51-62.

7 Petitioner also requests the Court to: (1) assume jurisdiction over this action; (2) enjoin Respondents from removing Petitioner from the United States, transferring him outside this District, or removing him to a country not listed in his removal order; (3) declare his re-detention unlawful; (4) provide safeguards so Petitioner may safely pursue a CAT claim before an IJ for any country Respondents may seek to remove him to; (5) order Respondents not to remove Petitioner to a third country where he is likely to be imprisoned upon arrival; (6) order Respondents to show cause why the petitioner's should not be granted; (7) if Petitioner is re-detained, order his immediate release based on

## III. Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

## IV. Petitioner is entitled to relief under § 1231 and *Zadvydas*.

Under § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days[.]" The 90-day period is known as the "removal period." *Id.* After the removal period expires, ICE has the discretion to continue to detain certain

---

his medical and caretaking needs; and (8) award Petitioner reasonable attorneys' fees and costs under the Equal Access to Justice Act (EAJA). Doc. 1, at 64-65.

The Court need not address Petitioner's request for Respondents to show cause, as the Court did so in part through its order for a response. Doc. 12. The Court also need not address Petitioner's request for EAJA fees and costs as a prevailing party, as Petitioner must separately seek these after a final judgment. 28 U.S.C. § 2412(d)(1)(B).

classes of noncitizens. *Id.* § 1231(a)(6). The "basic purpose" of § 1231 is "assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699.

However, detention of a noncitizen subject to an administratively final order of removal may not be "indefinite," and the Supreme Court set the "presumptively reasonable period of detention" under § 1231(a)(6) at six months. *Id.* at 699, 701; *see also Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005) (reiterating "the reasonable period of post-removal detention is presumptively six months"); *Roble v. Pontesso*, 90 F. App'x 334, 336 (10th Cir. 2004) (describing that "[a]s the possibility of removal becomes remote," the purpose of securing a noncitizen's appearance at immigration proceedings "drops out"). "*Zadvydas*'s six-month [reasonableness] presumption applies only to the first six months that elapse after the removal period is triggered." *Abedi v. Carter*, --- F.4th ---, No. 25-3179, 2026 WL 3149141, at *26 (10th Cir. Oct. 21, 2026). "After this six–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," Respondents "must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

A petitioner has the initial burden to show that it has been more than six months after the beginning of the 90-day removal period or rebut the

presumption of reasonableness if it has been less than six months and must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.*; *see also Abedi*, 2026 WL 3149141, at *26. If a petitioner meets their initial burden, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

**A. The application of § 1231 to Petitioner's detention.**

Petitioner alleges that his "lawful removal is not reasonably foreseeable" and so his continued detention is not authorized under § 1231. Doc. 1, at 50-51. Respondents argue that § 1231 authorizes Petitioner's detention. *See* Doc. 14, at 6-7.

Under § 1231(a)(2), the Attorney General "shall" detain noncitizens throughout the "removal period." The removal period begins following a removal order. 8 U.S.C. § 1231(a)(1)(A). A removal order may become administratively final—prompting the start of the removal period—upon the expiration of the time allotted for an appeal, if a noncitizen does not file an appeal within that time. *See* 8 C.F.R. § 1241.1(c). Certain classes of noncitizens, including those found to be inadmissible under § 212 of the Immigration and Nationality Act (INA), may be detained beyond the removal period. 8 U.S.C. § 1231(a)(6).

Petitioner was charged and found to be inadmissible under INA § 212(a)(6)(A)(i) as a noncitizen who was present in the United States without having been admitted or paroled. Doc. 1, Ex. 2, at 1; Doc. 14, Ex. 1, at 2. On June 28, 2018, an IJ ordered Petitioner removed from the United States. *See* Doc. 1, Ex. 1, at 13; *Id.* Ex. 2, at 8; Doc. 14, Ex. 1, at 2. Because Petitioner did not appeal the IJ's decision, as of June 28, 2018, Petitioner has been subject to a final administrative removal order. *See* 8 C.F.R. § 1241.1(c).

The 90-day removal period ended on September 26, 2018. Petitioner was re-detained on July 15, 2026, after the removal period expired. *See* Doc. 14, Ex. 1, at 3; *id.* Ex. 2, at 2. However, because Petitioner was found inadmissible under INA § 212, 8 U.S.C. § 1231(a)(6) governs his continued detention. *See* Doc. 1, Ex. 2, at 1.

### B. Petitioner has met his initial burden under *Zadvydas*.

The undersigned concludes that Petitioner has met his initial burden under *Zadvydas*.

#### 1. Six-month threshold.

"*Zadvydas*'s six-month [reasonableness] presumption applies only to the first six months that elapse after the removal period is triggered." *Abedi*, 2026

WL 3149141, at *26. Detention within the first six months following the start of the removal period is therefore presumptively reasonable. *See id.*

Respondents allege that, because Petitioner has been detained since July 15, 2026, his detention is within the six-month reasonable period under *Zadvydas*. Doc. 14, at 6. Respondents also argue that Petitioner's release from state custody on July 15, 2026, "resulted in a new beginning date for the removal period." *Id.* (quoting *Al-Shewaily v. Mukasey,* No. CIV-07-0946-HE, 2007 WL 4480773, at *3 n.11 (W.D. Okla. Dec. 18, 2007)).

The undersigned disagrees. *Abedi* held "that *Zadvydas*'s six-month presumption applies only to the first six months that elapse after the removal period is triggered." 2026 WL 3149141, at *26. *Zadvydas* did not create "a resettable six-month grace period" that arises "every time a noncitizen is detained," as Petitioner was. *Id.* at *28.

**a. Beginning of the removal period.**

There are three ways to calculate when the 90-day removal period begins. The statute provides that the removal period "begins on the latest of the following":

(i) The date the order of removal becomes administratively final;

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; and

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B)(i)-(iii). Respondents argue that "Petitioner's release from incarceration for convictions committed while on release . . . resulted in a new beginning date for the removal period." Doc. 14, at 6. *Abedi* squarely rejects this approach. 2026 WL 3149141, at *26, 28 ("[W]e hold that *Zadvydas*'s six-month presumption applies only to the first six months that elapse after the removal period is triggered. [] The government is simply no longer entitled to a presumption of reasonableness for any detention that occurs outside of the initial six-month period following the removal order becoming final."). Subsection (iii) applies if Petitioner is detained when his order of removal issues, not to subsequent detentions. *Id.*

**b. Expiration of the six-month presumptively reasonable period.**

On June 28, 2018, Petitioner was subject to a final administrative order of removal. As noted above, the *Zadvydas* six-month reasonableness presumption applies to the first six months that elapse after the removal period is triggered. *Abedi*, 2026 WL 3149141, at *26. As a result, Petitioner's

2026 detention falls well outside the presumptively reasonable period. Doc. 14, Ex. 1, at 3. The undersigned finds that Petitioner has demonstrated that his detention exceeds the *Zadvydas* six-month threshold. *See Abedi*, 2026 WL 3149141, at *26.

**2. Good reasons to believe removal is not reasonably foreseeable.**

To satisfy the burden under *Zadvydas*, a petitioner "must demonstrate the existence of either institutional barriers to repatriation or obstacles particular to his removal." *Dusabe v. Jones*, No. CIV-24-464-SLP, 2024 WL 5465749, at *3 (W.D. Okla. Aug. 27, 2024), *adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025); *see also Khaliq v. Noem*, 828 F. Supp. 3d 1260, 1267-68 (W.D. Okla. 2026) (confirming that Judges in this District have "looked to whether the petitioner has demonstrated institutional barriers to repatriation or obstacles particular to his removal"). A petitioner is not required to "show the absence of any prospect of removal—no matter how unlikely or unforeseeable." *Zadvydas*, 533 U.S. at 702. Rather, a petitioner need only demonstrate that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701.

Here, the undersigned finds that Petitioner has met his initial burden under *Zadvydas*. *Id.* Several years have elapsed since Petitioner's final order

of removal, and ICE has failed to secure Petitioner's removal to a third country. "[T]he passage of time takes on more significance as inaction and/or lack of progress in effectuating removal is precisely what *Zadvydas* guards against." *Khaliq*, 828 F. Supp. 3d at 1271; *see also Douglas v. Baker*, 812 F. Supp. 3d 525, 530 (D. Md. 2025) (finding that passage of time coupled with "the absence of any evidence that the government has used that time to advance efforts to remove" the petitioner demonstrates that petitioner's detention was no longer authorized by *Zadvydas*).

Additionally, since detaining Petitioner in July 2026, ICE has failed to make meaningful progress in securing his removal. *See Vishal v. Chestnut*, 811 F. Supp. 3d 1179, 1184 (E.D. Cal. 2025) (finding that petitioner satisfied his burden when he alleged that respondents "failed to provide notice of any progress that has been made over the past seven months to effectuate [petitioner's] removal"); *Trejo v. Warden of ERO El Paso E. Mont.*, No. EP-25-CV-401-KC, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025) (finding that petitioner met his burden by demonstrating, in part, "that ICE has not identified a third country that will accept him"). Petitioner explains Respondents' inconsistent representations concerning removal to Mexico. Doc. 15, at 8; Doc. 19, at 1. First, Petitioner alleged that ICE agents have attempted to coerce him to voluntarily depart to Mexico since he was initially detained.

Doc. 1, Ex. 1, at 1, 15, 17; Doc. 19, at 1. Respondents then allege that ICE "has not specifically mentioned Mexico" as a potential country of removal and that his removal to the country is "highly speculative." Doc. 14, at 9, 11. However, on October 28, 2026, ICE issued a "Notice of Removal" to Petitioner, indicating that it intends to remove him to Mexico. Doc. 19, Ex. 1, at 1. Respondents identify no removal date, evidence of Mexico's acceptance of Petitioner, travel arrangements or documents, or any other progress apart from an intention to move Petitioner.

Petitioner also explains that Deportation Officer Ruiz alleged that, on September 9, 2026, ICE sent an inquiry to the Honduran Consulate about accepting Petitioner. Doc. 14, Ex. 1, at 4. However, as Petitioner argues, there is no evidence that "any level of progress has been made toward obtaining the country's acceptance of Petitioner." Doc. 15, at 8 (quoting *Momennia v. Bondi*, No. CV 25-1067, 2025 WL 3006045, at *1 (W.D. Okla. Oct. 27, 2025)). The fact that ICE intends, or intended, to remove Petitioner to Honduras, by itself, also fails to support the conclusion that his removal is reasonably foreseeable. *See Momennia*, 2025 WL 3006045, at *1 (finding that "mere intent to find a third country," absent "specific communications between the United States and an identified country" is "too speculative to permit indefinite detention"). Neither the inquiry to Honduras nor the notice identifying Mexico establishes that

either country has agreed to accept Petitioner or that removal is likely within a reasonably foreseeable period.

**C. Respondents have not rebutted Petitioner's showing.**

Because Petitioner has established good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, Respondents must provide evidence sufficient "to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Here, the undersigned finds that Respondents' argument fails to rebut Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future. Respondents argue that "ICE now actively pursues third-country removals[.]" Doc. 14, at 8 (quoting *Surovtsev v. Noem*, 1:25-CV-160-H, 2025 WL 3264479, at *7 (N.D. Tex. Oct. 31, 2025)). However, general efforts do not provide "conclusive evidence" that *Petitioner* will be removed in the reasonably foreseeable future.[8]

---

[8] *See Rajigah v. Conway*, 268 F. Supp. 2d 159, 167 (E.D.N.Y. 2003); *see also Rudiuk v. Garland*, No. 3:25-CV-2600, 2025 WL 3211555, at *1 (S.D. Cal. Nov. 17, 2025) (finding that the Government failed to rebut the presumption where the Government's "sole contention" was that the petitioner was "likely to be removed to a third country"); *Hanifi v. Figueroa*, No. CIV-26-1229-D, 2026 WL 2620554, at *5 (W.D. Okla. Sept. 4, 2026) (finding that general statistics are insufficient to rebut a petitioner's showing because such figures do not "provide . . . evidence of progress . . . made towards removal of Petitioner himself") (internal citations omitted); *Cao v. Bondi*, No. CIV-25-1403-G, 2026 WL 637617, at *5 (W.D. Okla. Mar. 6, 2026) ("[A] general indication that

The undersigned recognizes that Deportation Officer Ruiz believes that Petitioner's removal is in the reasonably foreseeable future because ERO "currently engages with multiple countries to accept citizens for third country removal." Doc. 14, Ex. 1, at 4. Again, general efforts to remove noncitizens fail to demonstrate that Petitioner's removal is individually likely. Deportation Officer Ruiz also failed to provide specific and non-speculative evidence that demonstrates that Petitioner's removal is in the reasonably foreseeable future. *Khaliq*, 828 F. Supp. 3d at 1270 (finding that respondents failed to rebut the presumption of removal because they failed to provide objective evidence to support an ERO officer's statements); *Messay v. Gantt*, No. CIV-26-896-J, 2026 WL 2351423, at *3 (W.D. Okla. June 30, 2026) (finding that an ERO officer's declaration was "conclusory and threadbare" such that it failed to rebut the presumption of removal), *report and recommendation adopted*, No. CIV-26-896-J, 2026 WL 2019967 (W.D. Okla. July 13, 2026).

removals to Vietnam were likely because removals were occurring more frequently in 2025 than in recent years ... does not satisfy the ... determination of a significant likelihood that *the* alien may be removed"); *Shamma v. Raycraft*, No. 26-CV-492, 2026 WL 598451, at *2 (W.D. Mich. Mar. 4, 2026) (concluding that the "general, speculative statement" by respondents that "Israel will take stateless subjects and transfer to Palestine via the West Bank" was insufficient to meet their burden where respondents do not indicate Israel had agreed to take action for petitioner and, if so, respondents had not provided any timeline for his removal).

In sum, Respondents have not provided evidence sufficient to rebut Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future. So, the undersigned recommends that the Court grant Petitioner's petition and order his immediate release subject to an appropriate OOS. *See, e.g.*, *Bui v. Bondi*, No. CIV-26-91-J, 2026 WL 788947, at *5-6 (W.D. Okla. Mar. 20, 2026) (ordering the petitioner's immediate release "subject to an appropriate Order of Supervision" after finding a due process violation based on the petitioner's prolonged detention with no reasonable likelihood of removal to Vietnam).[9]

## V. Recommendation and notice of right to object.

The undersigned recommends that the Court grant the petition insofar as it seeks release under § 1231 and *Zadvydas* and decline to reach Petitioner's remaining grounds for release. The undersigned recommends that the Court order his immediate release subject to an appropriate OOS. The Court should

---

[9] Because Petitioner is entitled to release under § 1231(a)(6) and *Zadvydas*, the undersigned recommends the Court decline to reach whether his detention violates his procedural and substantive due process rights, the procedures under 8 C.F.R. §§ 241.4 and 241.13, the APA, and the *Accardi* doctrine. The undersigned further recommends that the Court not address Petitioner's request to enjoin Respondents, provide safeguards so he may apply for CAT relief, or order his immediate release based on his medical and caregiving needs.

further order Respondents to certify compliance by filing a status report within five business days of the Court's order. The undersigned also recommends that the Court order Respondents to comply with all applicable laws and regulations before any future re-detention of Petitioner, including any applicable exercises of discretion, notice, and opportunity to be heard.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by November 13, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[10] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation

---

[10] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance–particularly where strict application would undermine the habeas review process.").

disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 6th day of November 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE